UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

_____
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )
**CENTRO TEPEYAC,**                 )
     *Plaintiff*                    )
                                    )
     V.                             )
                                    )
                                    )
**MONTGOMERY COUNTY,**              )
                                    )
**MONTGOMERY COUNTY COUNCIL IN**    )
**ITS CAPACITY AS THE MONTGOMERY**  )
**COUNTY BOARD OF HEALTH,**         )
                                    )
**MONTGOMERY COUNTY DEPT.**         )
**OF HEALTH AND HUMAN SERVICES,**   )
                                    )
**AND MARC HANSEN, ACTING COUNTY**  )
**COUNSEL,**                        )
                                    )
     *Defendants*                   )
_____ )

**COMPLAINT**

Plaintiffs, Centro Tepeyac ("the Center"), by and through their undersigned attorneys, hereby sue Defendants, the Montgomery County Council, in its purported capacity as the County Board of Health; the Montgomery County Department of Health and Human Services; and Marc Hansen, Acting County Counsel, in his official capacity, and for their Complaint state as follows:

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Resolution 16-1252 (the "Resolution"), which was adopted on February 2, 2010. A copy of the Resolution is attached hereto as Exhibit A.

2. The Plaintiffs seek to talk to pregnant women about their options and provide practical support for pregnant women free of charge. The Resolution at issue requires them, as a precondition to even talking to women about pregnancy options, to post signs in their waiting rooms stating that they are not licensed medical professionals, and reciting the views of the Montgomery County Health Officer that pregnant women should seek advice elsewhere.

3. Abortion clinics, on the other hand, were intended to be, and in practice are, exempt from the Resolution. Therefore, abortion clinics can counsel women about pregnancy options without disclaimers as to the scope of their services, and without making mandatory statements about the views of the Montgomery County Health Officer. These clinics are exempt from the law, even if no licensed healthcare providers are involved in the pregnancy options counseling in any way.

4. The County Council enacted these speech restrictions—regulating private speech about the most controversial political, social, and ethical issue of our time—without any legislative evidence that Plaintiffs or any other speakers regulated by the Act have misled or misinformed patients about their qualifications, and without any evidence that similar counseling at abortion clinics need not be regulated.

5. The Resolution is therefore unconstitutional under the First and Fourteenth Amendments to the United States Constitution. The law is expressly content-based—if Plaintiffs wished to discuss any subject on earth *other than* pregnancy, the Resolution would not apply.

"Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

6. The Resolution is also unconstitutionally viewpoint-based, in that it is designed to regulate pregnancy counseling by pro-life centers, but not pregnancy counseling by abortion clinics. In fact, the County Council admitted the law was enacted in response to past pregnancy center speech to dissuade women from seeking abortions. The Supreme Court has been clear that such viewpoint discrimination violates the First Amendment: "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995).

7. The law is also impermissibly vague, overly broad, unsupported by the legislative evidence, and is so arbitrary and capricious in its selective speech restrictions that it fails even rational basis review.

8. Accordingly, preliminary and permanent injunctive and declaratory relief are warranted.

## I.  JURISDICTION AND VENUE

9. The Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court is authorized to issue permanent injunctive relief pursuant to Fed. R. Civ. P. 65, and to award Plaintiff attorney's fees and costs pursuant to 28 U.S.C. § 1988, and damages pursuant to 28 U.S.C. § 1983.

10. Venue is proper in the District of Maryland, Southern Division, pursuant to 28 U.S.C. § 1391(b).

## II.  PARTIES

11. Centro Tepeyac (the "Center") is a Maryland 501(c)(3) not for profit corporation that discusses pregnancy options with women in Defendant Montgomery County, Maryland (the "County") at 1315 Apple Avenue in Silver Spring.

12. The Center seeks to meet emotional, physical and spiritual needs of women by providing services including pregnancy testing, referral services, and confidential discussion of pregnancy options.  The Center also provides information on parenting and post-abortion guidance and provides women with practical support in the form of diapers, baby clothes and other needed items.

13. The Center provides services to over 1,900 women per year.  The Center does not charge women for its services.

14. The Center does not refer or provide for abortion.  The Center does provide information about abstinence and natural family planning, both of which are recognized forms of birth control.

15. The Center has provided information and help to women in the Washington, DC area since 1990 and expects and intends to do so in the future.

16. Defendant Montgomery County Council is the County's legislature and, purporting to act as the County Board of Health, enacted the Resolution.

17. Defendant Marc Hansen is the Acting County Attorney for Montgomery County and is sued in his official capacity.

18. Defendant Department of Health and Human Services is a department of the Montgomery County government.

## III. GENERAL ALLEGATIONS

19. On February 2, 2010, the Montgomery County Council, purportedly acting as the County Board of Health pursuant to County Code § 2-65, passed Resolution No. 16-1252 (the "Resolution") to create special speech rules for "Limited Service Pregnancy Resource Center[s]." The Resolution took effect on February 2, 2010.

20. The Resolution defines "Limited Service Pregnancy Resource Center" and "Center" as "an organization, center or individual that (A) has a primary purpose to provide pregnancy-related [sic]; (B) does not have a licensed medical professional on staff; and (C) provides information about pregnancy-related services, for a fee or as a free service." Resolution 16-1252(a)(3).

21. The Resolution defines "Licensed medical professional on staff" as "one or more individuals who: (A) are licensed by the appropriate State agency under Title 8, 14, or 15 of the Health Occupations Article of the Maryland Code; (B) provide medical-related services at the Center by either: (i) providing medical services to clients at the Center at least 20 hours per week; or (ii) directly overseeing medical services provided at the Center; and (C) are employed by or offer their services at the Center." Resolution 16-1252(a)(2).

22. The Resolution requires limited service pregnancy resource centers to post a disclaimer stating that "the Center does not have a licensed medical professional on staff" and that "the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." Resolution 16-1252(b)(1). The sign must be "easily readably [sic]" and "conspicuously posted in the Center's waiting room or other area where individuals await service." Resolution 16-1252(b)(2). The sign must be written in both in English and Spanish. Resolution 16-1252(b)(2)(a).

23. If Defendant Department of Health and Human Services "learns that a limited service pregnancy center is in violation" of the resolution, the Department must "issue a written notice ordering the Center to correct the violation within either: (a) 10 days of the notice; or (b) a longer period that the Department specifies in the notice." Resolution 16-1252(c)(3).

24. Failure to comply with the Resolution constitutes a Class A civil violation. Resolution 16-1252(c)(1). The penalty for a first Class A civil violation is a fine of up to $500. Montgomery County Code, §1-19. The penalty for repeat offenses is a fine of up to $750. *Id.* Each day of noncompliance constitutes a separate offense. *Id.* at 1-20. Accordingly, Plaintiff faces fines in excess of $20,000 per month if they do not comply with the Resolution.

25. Additionally, the County Attorney may file an action to enjoin repeated violations of the Resolution. Resolution 16-1252(c)(2).

26. The County Council was not presented with evidence that clients of limited service pregnancy centers in Montgomery County mistakenly believed that the centers provide medical services.

27. The County Council was not presented with evidence that clients neglected to seek medical services related to pregnancy as a result of being misled by limited service pregnancy resource centers.

28. The County Council was not presented with evidence indicating that "licensed medical professionals" are in any way involved in counseling pregnant women at abortion clinics.

29. No evidence was presented to the County Counsel concerning the medical licensing of those who consult with women seeking advice at abortion clinics.

30. The County Council admitted that the regulation was aimed at pro-life pregnancy resource centers because of the alleged past speech of some pro-life pregnancy resource centers about abortion.

31. The County Council issued a press release in conjunction with the enactment of the Resolution explaining that the Resolution was in response to past speech of pro-life pregnancy centers to dissuade women from choosing abortion. This press release is attached as Exhibit B.

32. The County Council was not presented with evidence of the existence of even a single abortion clinic in the County that would be subject to the Resolution's speech restrictions.

33. The Resolution does not apply to all individuals, centers, or organizations providing pregnancy-related information and services or pregnancy options.

34. The Resolution does not apply to individuals, groups, centers, guidance counselors, social workers, magazines, websites, libraries, or any other speaker who provides information on or counsels on pregnancy options in the County but do not have "a primary purpose" to discuss pregnancy.

35. The Resolution does not apply to individuals, centers, or organizations providing non-pregnancy related counseling and information regarding health-related services.

36. The Resolution does not require pregnancy centers that employ licensed medical professionals to involve those licensed medical professionals in pregnancy options counseling in any way or to advise women of their availability for consultation.

37. The Resolution does not require licensed medical professionals to be present during business hours.

38. No interaction between licensed medical professionals and clients of abortion clinics is mandated by the Resolution at any pregnancy centers in Montgomery County.

39. The Resolution does not require any abortion clinics to advise women that the "Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider." Resolution 16-1252(b)(1)(b).

40. The Resolution requires only limited service pregnancy resource centers to recommend that clients "consult with a licensed health care provider." Resolution 16-1252(b)(1)(b).

41. The Resolution purports to extend the term "limited service pregnancy resource centers" to include any "individuals" if those individuals have "a primary purpose" of "provid[ing] information about pregnancy-related services."

42. Accordingly, the Resolution could require an individual who counsels women on the sidewalk outside of abortion clinics to post a sign before speaking about pregnancy. Likewise, the Resolution could require a church volunteer who provides support to pregnant women to post a sign before speaking about pregnancy.

43. The Resolution does not define the terms "a primary purpose," "medical services," "medical-related services," and "directly oversees."

44. Depending on the definition of these terms, the Resolution could also regulate the speech of maternity stores, grocery stores, malls, and other businesses that sell pregnancy-related items.

45. The Center has as its primary purpose providing pregnancy-related services.

46. The Center provides services and information about pregnancy-related services as a free service.

47. The Center does not keep a licensed medical professional on its staff.

48. The pregnancy discussions and help provided by the Center are of a sensitive nature, and selectively regulating the Center's speech is detrimental to the Center's mission of counseling and helping women.

49. The Resolution forces Plaintiff to suggest that they do not provide the services that the Montgomery County Health Officer believes are necessary for clients of pregnancy centers.

50. The Resolution forces Plaintiff to suggest that they are not qualified to discuss pregnancy options or to provide help to pregnant women.

51. The existence of the Resolution imposes an impermissible chill on Plaintiff's speech, subjecting Plaintiff to irreparable harm.

52. Enforcement of the Resolution will irreparably harm Plaintiff by infringing upon Plaintiff's First Amendment rights to free speech.

53. Plaintiffs have no adequate remedy at law.

## COUNT I—VIOLATION OF FIRST AMENDMENT

54. Paragraphs 1-__ are incorporated as if fully set forth herein.

55. The First Amendment to the United States Constitution provides, in relevant part:

Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . .

56. The First Amendment is applicable to state and local government by incorporation in the Fourteenth Amendment.

57. The Resolution unconstitutionally restricts Plaintiff's rights of free speech and assembly.

58. The Resolution unconstitutionally discriminates against Plaintiff's speech based on its content.

59. The Resolution unconstitutionally discriminates against Plaintiff's speech based on its viewpoint.

60. The Resolution unconstitutionally burdens Plaintiff's speech because of allegations about past speech by speakers to dissuade women from choosing abortion.

61. The Resolution is an unconstitutional prior restraint because Plaintiff must cease counseling pregnant women unless and until Plaintiff posts the disclaimers required by the Resolution.

62. The Resolution is an unconstitutional burden on free association and assembly because Plaintiff must cease meeting with pregnant women unless and until Plaintiff posts disclaimers in compliance with the Resolution.

63. The Resolution unconstitutionally compels speech.

64. The Resolution is unconstitutionally and substantially overbroad.

65. The Resolution is unconstitutionally underinclusive.

66. The Resolution imposes an unconstitutional chill on Plaintiff's speech, and without declaratory and injunctive relief, will continue to do so.

67. Plaintiff has no adequate remedy at law.

68. Accordingly, the Resolution violates the First Amendment of the United States Constitution.

### COUNT II—VIOLATION OF FOURTEENTH AMENDMENT

69. Paragraphs 1-__ are incorporated as if fully set forth herein.

70. The Fourteenth Amendment provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

71. The Resolution singles out Plaintiff for special speech regulations that are not required of speakers at abortion clinics.

72. The Resolution singles out Plaintiff for special speech regulations that are not required of most other speakers discussing pregnancy in the County.

73. The Resolution imposes these speech restrictions arbitrarily and capriciously, without any legislative evidence that actual clients of limited service pregnancy centers in Montgomery County mistakenly believed that the centers provide medical services, and without the Council's having heard any evidence that women at abortion clinics in Montgomery County are advised that licensed medical professionals are available for consultation at any stage of her decision-making process.

74. The Resolution is arbitrary and capricious in that it purports to require centers that employ licensed medical professionals for 19 hours per week to post signs falsely indicating they do not employ licensed medical professionals at all.

75. The Resolution is impermissibly vague in that it applies only to centers that have "a primary purpose to provide pregnancy-related," which is unintelligible.

76. The Resolution is impermissibly vague, in that it fails to define "a primary purpose," "medical services," "medical-related services," "directly oversees" and other terms.

77. The Resolution impermissibly burdens and chills the exercise of Plaintiffs' constitutional rights and, without declaratory and injunctive relief, will continue to do so.

78. The Plaintiffs have no adequate remedy at law.

11

79.     Accordingly, the Resolution is unconstitutional under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such damages and other relief to the Plaintiffs as are reasonable, just and necessary.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the court:

(a) Declare the Resolution unconstitutional on its face and/or as-applied to Plaintiffs;

(b) Enter preliminary and permanent injunctions against enforcement of the Resolution;

(c) Award Plaintiff damages pursuant to 42 U.S.C. § 1983.

(d) Award Plaintiff costs of the litigation, including reasonable attorneys' fees and expenses under 42 U.S.C. § 1988; and

(e) Award any and all other relief the Court deems just and proper.

The originals will be held in Counsel's file and is available for inspection upon request by a party authorized by Maryland Rules.

Respectfully submitted,

  /s/ John R. Garza
John R. Garza, Esq., #01921
Garza, Regan & Associates
17 West Jefferson St.
Rockville, MD 20850
jgarza@garzanet.com
(301) 340-8200

Robert Michael
Shadoan, Michael & Wells LLP
108 Park Avenue
Rockville, MD 20850
301-762-5150

        Mark L. Rienzi*
        Robert Destro*
        Columbus School of Law
        Catholic University of America
        3600 John McCormack Rd. NE
        Washington, DC 20064
        202-319-4970

*Of counsel*
Steven H. Aden*
Casey Mattox*
Matthew Bowman*
ALLIANCE DEFENSE FUND
801 G St., N.W., Suite 509
Washington, DC  20001
202-393-8690

*Attorneys for Plaintiff*

**Pro hac vice* motions to be filed*