IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| CENTRO TEPEYAC | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: DKC 10 CV 1259 |
| | * | |
| MONTGOMERY COUNTY, et al. | * | |
| | * | |
| Defendants | * | |

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The Defendants, Montgomery County, Montgomery County Council, Montgomery County Department of Health and Human Services, and Marc Hansen, Acting County Attorney, pursuant to Rules 12(b), 56, and 65 of the Federal Rules of Civil Procedure, oppose the Plaintiff's purported motion for preliminary injunction, move to dismiss the Plaintiff's complaint, or, in the alternative, move for summary judgment, and, in support thereof, state:

### I. STATEMENT OF THE CASE

On or about May 19, 2010, the Plaintiff filed the instant Complaint. On May 21, 2010, an unidentified person delivered to the Office of the County Attorney, the Complaint, a Memorandum in Support of Plaintiff's Motion for Preliminary Injunction ("Memorandum"), and a summons for each of the above-named defendants. The foregoing materials did not include a motion for preliminary injunction or an "Exhibit A" that is referenced in the Complaint, and, apparently, were not served upon the Montgomery County Council.

The Complaint alleges that the Montgomery County Council, sitting as the Board of Health, adopted a Resolution (No. 16-1252) that violates the First and Fourteenth Amendments to the United States Constitution. The Complaint seeks a declaration that the

Resolution is unconstitutional, as well as injunctive relief and damages. The Memorandum that accompanied the Complaint purports to support a motion to preliminarily enjoin the enforcement of the Resolution.

## II. STATEMENT OF THE FACTS

On or about November 10, 2009, several members of the Montgomery County Council sponsored Resolution No. 16-1252 proposing that the Council, sitting as the County Board Health, adopt a regulation governing pregnancy resource centers. (*Exhibit 1, Resolution No. 16-1252*).[1] The Resolution generated ample public debate and a copious legislative record. As adopted, the Resolution enacted a regulation governing a "Limited Service Pregnancy Resource Center" ("LSPRC") which the Resolution defines as an "organization, center, or individual that:"

> has a primary purpose to provide pregnancy-related services;[2]
> does not have a licensed medical professional on staff; and,
> provides information about pregnancy-related services, for a fee or as a free service.

(*Exhibit No. 1, lines 14-17*).

The Resolution requires such an LSPRC to post a sign on its premises stating that:

> the Center does not have a licensed medical professional on staff; and
> the Montgomery County Health Officer encourages women who are or may be pregnant to consult with a licensed health care provider.

---

[1] The Council sits as the Board of Health under § 2-65 of the Montgomery County Code. The County Code is available on-line at: http://www.amlegal.com/library/md/montgomeryco.shtml.

[2] The Resolution that the Plaintiff attached to its Memorandum as Exhibit B does not contain the word "services" after the phrase "pregnancy-related." That version of the Resolution was posted on the Council's website, but is not the version that the Council approved. The version that the Council approved contained the word "services" and the posted version has since been corrected, as is reflected by the attached Exhibit No. 1.

(*Exhibit No. 1, lines 21-23*).

The sign must be "written in English and Spanish," "easily readable,"[3] and "conspicuously posted . . . ." (*Exhibit No. 1, lines 25-28*). A violation of the regulation is a "Class A civil violation," but a citation may not be issued until after the Department of Health and Human Services has issued a "written notice" of a violation and allowed the violator at least 10 days to comply. (*Exhibit No. 1, lines 30 and 38-42*).

As is reflected in the legislative record, the Resolution was borne of the Council's concern about the accuracy and truthfulness of information being provided to pregnant woman at pregnancy resource centers. The concern is well-grounded. In July of 2006, committee staff with the United States House of Representatives issued a report documenting the false and misleading information provided by pregnancy resource centers. That report was submitted to the County Council (and is attached to the Plaintiff's Memorandum as part of Exhibit D).[4] The report found that pregnancy centers falsely claimed that there is a link between abortion and breast cancer and misinformed pregnant women about the risks of an abortion. (*Exhibit D, circle 8*).[5] The House report does not stand alone. In January 14, 2008, the NARAL Pro-Choice Maryland Fund issued a report detailing the results of its investigation of pregnancy centers in Maryland, including Montgomery County. NARAL found that every pregnancy

---

[3] The Plaintiff incorrectly quotes the Resolution as stating that the sign must be "easily readably." (*Memorandum, p. 5*).

[4] And is accessible on-line at:
http://www.montgomerycountymd.gov/content/council/pdf/agenda/col/2010/100202/20100202_13.pdf.

[5] Again, Exhibit D is attached to the Plaintiff's Memorandum. Documents introduced into the legislative record (as part of the January 29, 2010 Memorandum) are identified by circled numbers.

3

center that its investigators visited "provided misleading, or, in some cases, completely false, information." (*Exhibit D, circle 27*). The false information related, *inter alia*, to the risks of abortion, including claims that, contrary to the medical data, abortion increases the risk of breast cancer. (*Exhibit D, circle 25*).

On December 1, 2009, the Council conducted a public hearing on the Resolution. Multiple speakers (and correspondents) related their personal experiences with pregnancy centers in Montgomery County. These speakers described how the pregnancy centers misinformed them about the risks of abortion and the effectiveness of condoms and otherwise provided wholly inaccurate medical advice. (*Exhibit D, circles 40-46*). One of the speakers and a correspondent identified the Plaintiff as one of the centers that misinformed pregnant women. (*Exhibit D, circles 40 and 42*). A correspondent stated that the Plaintiff's employee informed her that she "would become sterile from using the birth control pills and that [her] sterility would inevitably lead to cancer." (*Exhibit D, circle 43*). A speaker described how the Plaintiff's employee provided "medical advice" and only after several inquiries did the Plaintiff's employee admit that "we're not doctors." (*Exhibit D, circle 40*). Another speaker expressed concern that women could be duped into believing that the pregnancy centers are medical facilities. (*Exhibit D, circle 41*).

On February 2, 2010, the Council adopted the Resolution. On or about May 19, 2010, the Plaintiff filed the instant lawsuit challenging the Resolution. In support of its challenge, the Plaintiff claims that the disclosure required by the Resolution is a "precondition" to the Plaintiff "even talking to women about pregnancy options . . . ." (*Complaint,* ¶ 2). The Plaintiff contends that the Resolution is "content-based" and discriminates based on

"viewpoint" because "abortion clinics" are "exempt from the law, even if no licensed healthcare providers are involved in the pregnancy options counseling in any way."[6] (*Complaint,* ¶ 3). The Plaintiffs further contend that the Resolution is "vague, overly broad, unsupported by the legislative evidence, and is so arbitrary . . . that it fails even rational basis review." (*Complaint,* ¶ 7). The Complaint asserts claims under the First and Fourteenth Amendments to the United States Constitution.

### III. STATEMENT OF THE LAW

### The Preliminary Injunction Standard

A preliminary injunction has been "uniformly characterized . . . as an extraordinary remedy involving the exercise of very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1977) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989)). Being an "an extraordinary remedy," a preliminary injunction is "never awarded as of right." *Winter v. NRDC, Inc.*, 129 S.Ct. 365, 376, 172 L:.Ed. 2d 249, 263 (2008). A plaintiff seeking a preliminary injunction must establish that

> the plaintiff "is likely to succeed on the merits;"
> the plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief;"
> "the balance of equities tips" in the plaintiff's "favor;" and
> "an injunction is in the public interest."

*Winter,* 129 S. Ct. at 374, 172 L. Ed. 2d at 261.

In its review of a request for a preliminary injunction, the courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter,* 129 S. Ct. at 376, 172 L. Ed. 2d at 263 (internal citations omitted).

---

[6] The terms "abortion clinics" and "involved" are not defined in the Complaint.

5

The courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376, 172 L. Ed. 2d at 263 (internal citations omitted).

The plaintiff "bears the burden of establishing" that each of the four factors "supports granting the injunction." *Direx Israel, Ltd.*, 952 F.2d at 812. The plaintiff "seeking preliminary relief" must also "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375, 172 L. Ed. 2d at 262; *see also*, *Direx Israel*, 952 F.2d at 812.

Because the public interest is often embodied in the law, a plaintiff who seeks to enjoin a public instrumentality "must demonstrate a higher probability of success and danger of irreparable harm than would be required against a private party." *Penn Central Company v. Public Utils. Comm'n of Connecticut*, 296 F. Supp. 893, 897 (D. Conn. 1969) (citing *Yakus v. United States*, 321 U.S. 414, 440-41 (1944)); *see also*, *Planned Parenthood Minnesota v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008). Even if the balance of hardship weighs in favor of the plaintiff, the Court may, in the public interest, withhold relief until a final determination is made on the rights of the parties. *See Texaco, Inc. v. Hughes*, 572 F. Supp. 1, 3 (D. Md. 1982). And "where it is legally impossible for a plaintiff to succeed on the merits of its underlying claim, the district court may not grant the requested injunction, no matter how severe or irreparable an injury the plaintiff may otherwise suffer." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 417 (4th Cir. 1999) (citing *Texas v. Seatrain Int'l*, 518 F.2d d175, 180 (5th Cir. 1975).

### The First Amendment - Speech

The First Amendment of the United States Constitution prohibits the Congress from making "any law abridging the freedom of speech . . . ." *U.S. Const., amend. I*. This free

6

speech guarantee is applied to the States and their political subdivisions through the Due Process Clause of the Fourteenth Amendment. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 561 (1980). Laws that impinge upon speech implicate the First Amendment. Laws that regulate conduct, rather than expression, do not even implicate free speech guarantees. *See Texas v. Johnson,* 491 U.S. 397, 404 (1989); *Galloway v. Maryland*, 365 Md. 599, 781 A.2d 851 (2001), *cert. denied*, 535 U.S. 990 (2002).

The First Amendment "generally prevents government from "proscribing speech . . . because of disapproval of the ideas expressed." *R.A.V v. St. Paul*, 505 U.S. 377, 382 (1992). Such "[c]ontent-based regulations are presumptively invalid." *Id.* The "rationale" of that "general prohibition . . . is that content discrimination raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *Davenport v. Washington Education* Association, 551 U.S. 177, 188 (2007) (internal citations omitted). To determine whether a regulation is content-neutral, the courts inquire, principally, into "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *see also*, *Madsen v. Women's Health Center,* 512 U.S. 753 (1994). "The government's purpose is the controlling consideration." *Ward v. Rock Against Racism,* 491 U.S. at 791. Thus, a "regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id*.

The "prohibition against content discrimination . . . is not absolute." *R.A.V,* 505 U.S. at 387. "It applies differently in the context of proscribable speech than in the area of fully

7

protected speech." *Id.* "When the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable, no significant danger of idea or viewpoint discrimination exists." *Id.* "Such a reason, having been adjudged neutral enough to support exclusion of the entire class of speech from First Amendment protection, is also neutral enough to form the basis of distinction within the class." *Id.* In a like vein, fraudulent speech and "other forms of public deception" are not protected by the First Amendment. *Illinois v. Telemarketing*, 538 U.S. 600, 612 (2003) (and cases cited therein); *see also, Conte v. Louisiana Motor Vehicle Commission*, 24 F.3d 754 (5th Cir. 1994).

The foregoing cases address laws that limit or proscribe speech. The First Amendment also protects the "right to refrain from speaking." *Planned Parenthood Minnesota v. Rounds*, 530 F.3d 724, 733 (8th Cir. 2008); *see also Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 650-651 (1985). There has arisen, particularly in the abortion context, a body of case law that addresses the First Amendment implications of government compelled disclosures.

In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, the Court addressed the constitutionality of a state law that required physicians to make certain disclosures to patients regarding abortion risks. 505 U.S. 833 (1992). The Court acknowledged that the First Amendment was "implicated," but upheld the disclosure requirement. *Id.* at 884.[7] The Court recognized and emphasized the government's legitimate interest in ensuring that women are "fully informed" before making decisions about terminating a pregnancy. *Id.* at 882; *see also, Gonzales v. Carhart*, 550 U.S. 124 (2007). The Court also noted that the information

---

[7] Though only three Justices joined in the primary opinion, under the guidance of *Marks v. United States*, 430 U.S. 188 (1977), that opinion constitutes the Court's holding.

required to be disclosed was "truthful" and "nonmisleading." *Casey*, 505 U.S. at 882.

In *Planned Parenthood Minnesota v. Rounds*, the Eighth Circuit addressed a similar compelled disclosure. 530 F.3d 724 (8th Cir. 2008). The South Dakota statute at issue required a physician performing an abortion to provide "certain information to the patient as part of obtaining informed consent prior to an abortion procedure . . . ." *Id.* at 726. The court read *Casey* and *Gonzales v. Carhart* as establishing that the state "can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion . . . ." *Id.* at 735; *see also Summit Medical Center of Alabama v. Riley*, 274 F. Supp 2d 1262 (M.D. Ala. 2003); *Eubanks v. Schmidt*, 126 F.Supp. 2d 451 (W.D. Ky. 2000).

In a commercial context, the Supreme Court, in *Zauderer v. Office of Disciplinary Counsel*, upheld disciplinary action against an attorney who failed to include in his advertising certain "factual" information about his services. 471 U.S. 626, 651 (1985). The Court noted that the attorney "overlook[ed] the material differences between disclosure requirements and outright prohibitions on speech." *Id.* at 650. The Court found no First Amendment violation in disclosure requirements that "are reasonably related to the State's interest in preventing deception of consumers." *Id.* at 651.

The quantum of evidence needed to justify a speech restriction is not great. In *Florida Bar v. Went for It* (a commercial speech case), the Court noted that it has "permitted litigants to justify speech restrictions by reference to studies and anecdotes . . . ." 515 U.S. 618, 628 (1995). "Even in a case applying strict scrutiny," restrictions may be "based solely on history, consensus, and simple common sense." *Id.* (internal citations omitted). And courts

9

may not strike down "an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968).

### Freedom of Association

The courts have "referred to constitutionally protected 'freedom of association' in two distinct senses." *Roberts v. United States*, 468 U.S. 609, 617 (1984). "In one line of decisions," the Court "has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State . . . ." *Id.* at 617-618. "In this respect, freedom of association receives protection as a fundamental element of personal liberty." *Id.* at 618. In another line of cases, "the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.*

### Overbreadth

Departing from the "traditional rules of standing," the Supreme Court has allowed "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

> Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Id.*

The overbreadth doctrine is "employed by the Court sparingly and only as a last resort." *Id.* at 613. "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Id.* "[O]verbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but

10

doing so in a neutral, noncensorial manner." *Id.* at 614. "Particularly where conduct and not merely speech is involved," the Court requires that "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615; *see also Hill v. Colorado*, 530 US 703 (2000). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 US 113, 124 (2003). Also, for a facial challenge to succeed, there must be no circumstances to which the statute could be constitutionally applied. *See United States v. Salerno*, 481 U.S. 739 (1987).

### The Equal Protection Clause

The Fourteenth Amendment "forbids the States to deny to any person within [their] jurisdiction the equal protection of the laws, but does not prevent the States from making reasonable classifications among such persons." *W&S Life Insurance Co. v. State Board of Equalization*, 451 U.S. 648, 657 (1981) (internal citations omitted). A classification "neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319 (1993). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320. And "a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification." *Id.* (internal citations omitted). A classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal citations omitted). A government "has no obligation to produce evidence to sustain the rationality of a statutory

11

classification . . ." a "legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (internal citations omitted).

Further, the Supreme Court "has made clear that a legislature need not strike at all evils at the same time or in the same way." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) (internal citations omitted). A "legislature may implement [its] program step by step, . . . adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *Id.*

### Vagueness

"A statute can be impermissibly vague for either of two independent reasons." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Id.* "Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Id.*

A vagueness challenge will be upheld only when the statute is so "'indefinite as to really be no rule or standard at all.'" *Maryland-National Park and Planning Commission v. Rockville*, 272 Md. 550, 559, 325 A.2d 748, 754 (1974) (quoting *Small Co. v. American Sugar Ref. Co.*, 267 U.S. 233, 239 (1925)). Where a statute "is so broad as to be susceptible to irrational and selective patterns of enforcement . . ." it will be deemed unconstitutional under the vagueness doctrine. *Bowers v. State*, 283 Md. 115, 122, 389 A.2d 341 (1978) (citing *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-403 (1966)). That the words of a statute "contain germs of uncertainty" that may give rise to "disputes" over their meaning, does not render the statute unconstitutionally vague. *Broadrick v. Oklahoma*, 413 U.S. at 608. A law that "is not so vague that 'men of common intelligence must necessarily guess at its meaning'" will not be voided. *Id.*

12

(quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)). The Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-499 (1982). Courts must bear "in mind that unavoidable imprecision is not fatal and celestial precision is not necessary." *Hart Books Stores, Inc. v. Edmisten*, 612 F.2d 821, 833 (4th Cir. 1979). Even statutory language that creates uncertainty as to its application will not be subject to a vagueness challenge when the language is "unquestionably applicable" to the challenger. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59 (1976) (plurality opinion). *See also ILQ Investments v. City of Rochester*, 25 F.3d 1413 (8th Cir. 1994), *cert .denied*, 513 U.S. 1017 and cases cited therein.

## IV. ARGUMENT

**Preliminary Matters – Improper Parties, Improper Service, and Invalid Averments**

The Plaintiff has sued Montgomery County, the Montgomery County Council, the Montgomery County Department of Health and Human Services, and Marc Hansen in his official capacity as Acting County Attorney. The claim against Mr. Hansen is a claim against the County. *See Kentucky v. Graham*, 473 U.S. 159 (1985). The Department of Health and Human Services is an agency that cannot be sued. *See e.g., Hines v. French*, 157 Md. App. 536, 573, 852 A.2d 1047 (2004).

The Council is the legislative branch of the County government. But the Council does sit as an independent rule-marking body when it acts as the Board of Health. Insofar as the Council can be sued as an independent party, the Plaintiff was required to serve the Council's "presiding officer." *Md Rule Civ. P.* 2-124(l); *see also Fed. R. Civ. P.* 4(j). Upon information and belief, that service was not effected.

In support of its Memorandum, the Plaintiff offers the affidavit of Ms. Vera. Paragraph 4 of the affidavit is hearsay and should be stricken. Paragraphs 10 and 11 of the affidavit express an opinion that Ms. Vera has not been qualified to offer. Those paragraphs should be stricken (or disregarded).

## First Amendment Claims

The Plaintiff's entire case is built on a series of false premises (some patently so) and irrelevancies. Among these is the repeated claim that the Resolution is "viewpoint-based" because, purportedly, it does not regulate abortion clinics. Contrary to its aversion to undefined terms, the Plaintiff does not define "abortion clinic." Presumably, an abortion clinic is a medical facility where abortions are performed by doctors. The Plaintiff points to no language in the Resolution that exempts "abortion clinics." That is because the words are not to be found in the Resolution. Instead, the Plaintiff reasons that because the Resolution only applies to pregnancy centers that do not have licensed medical professionals and abortion clinics always have licensed medical professionals (i.e. doctors), the Resolution, therefore, exempts abortion clinics and does so because the Resolution favors abortion. The Plaintiff's reasoning is flawed. The Resolution ensures that LSPRC's that do not have licensed medical professionals on-site disclose that fact to pregnant women and that pregnant women are made aware that the County health officer recommends that they consult a doctor. The Resolution does not exempt abortion clinics on its face and, insofar as it does so in application, that is only because abortion clinics employ doctors. The "exemption" has nothing to do with the Council's, or anyone else's, view of abortion. As is reflected in the legislative record, a "pro-life" LSPRC that employs licensed medical professionals, like, for example, the Rockville

14

Pregnancy Center (*Exhibit D, p. 5 and circle 46*), would NOT be subject to the disclosures required by the Resolution. The Resolution regulates based on whether there is a licensed medical professional on-site at an LSPRC, not on viewpoint. In order to achieve viewpoint neutrality, under the Plaintiff's absurd reasoning, the Resolution would have to require that abortion clinics with licensed medical staff falsely advise women that they have no licensed medical staff.

The Plaintiff also quibbles that the Resolution exempts abortion clinics (which it does not) "even if no licensed healthcare providers are involved in the pregnancy options counseling . . . ." (*Complaint, ¶ 3*). The claim is vague (the term "involved" is not defined), irrelevant and less than accurate. The Resolution does not and cannot guarantee that all pregnant women will always have access to a licensed medical professional. But it does serve its intended purpose by ensuring that pregnant women will be better informed when they consult an LSPRC. And the Resolution does increase the possibility that women will consult with a licensed health care provider, or receive advice from someone who is properly trained, by requiring licensed medical professionals to provide at least 20 hours of medical services per week at the LSPRC or to directly oversee medical services at the LSPRC.

The Plaintiff contends that the Resolution is content-based because it only applies "if speakers wish to talk about . . . pregnancy." (*Memorandum, p. 2*) That contention is a contrivance. The plain language of the Resolution and the legislative record clearly state that the Resolution is intended to ensure that pregnant women are made aware when a LSPRC does not have licensed medical professionals on staff and that the County Health Officer encourages pregnant women to consult a licensed health care provider. The Resolution is not directed at

15

speech or the content of speech, but, rather at LSRPC's that provide pregnancy-related services.

Under the case law, a regulation is content-based when it regulates the content of speech because of disapproval of the idea expressed. The Resolution regulates none of the views expressed by the Plaintiff and contains no requirement that could possibly be construed as regulating the Plaintiff's speech based on the Council's disagreement with any message conveyed by the Plaintiff. The Resolution, on its face and in application, simply does not regulate the content of speech. The content-based restrictions on core speech addressed in the case law cited by the Plaintiff are irrelevant. What is relevant is the Supreme Court's decision in *Casey* which applied, at most, rational basis review in upholding a law requiring doctors to make certain disclosures to pregnant women. The Plaintiff ignores *Casey* and its progeny, grasping to rely on *Wooley* which struck down a criminal law that forced a citizen to adopt an ideological message. *Wooley* has no bearing on the truthful, nonmisleading disclosures required by the Resolution to further the Council's compelling interest in protecting pregnant women. *Casey* expressly distinguished *Wooley* with respect to the type of disclosures at issue in this case. *Casey* is on point and controls; *Wooly* is irrelevant.

Continuing its strained line of reasoning, the Plaintiff argues that the Resolution is somehow underinclusive because it does not regulate libraries, "Jenny Craig" and "Weight Watchers." (*Complaint, 34; Memorandum, p. 16*). That is another straw person argument. The Resolution is intended to address a specific concern about misinformation given to pregnant women and to ensure that women get complete and accurate medical advice about their pregnancy. It is not intended, and need not be intended, to regulate every

16

communication in every forum about pregnancy. There is no legal requirement that the government regulate every communication about abortion in order to enact a regulation ensuring that pregnant women receive certain accurate information. And any social problem can be addressed piecemeal. *See Minnesota v. Clover Leaf Creamery*, 449 U.S. 456.

Somewhat contradictorily, the Plaintiff argues that, in addition to being underinclusive, the Resolution is also "overly broad," but does not really explain how that it so. (*Complaint,* ¶ 7). There is no dispute (from the Plaintiff) that the Resolution applies to it. There is no showing that the existence of the Resolution could cause others to refrain from exercising their constitutional right to speak freely. The Resolution's application is clearly demarcated and does nothing more than require the placement of a sign at an LSPRC that provides accurate information to pregnant women. The Resolution does not limit what the Plaintiff may communicate to its clients.

In its Complaint, the Plaintiff passingly characterizes the Resolution as a prior restraint and passingly claims that the Resolution burdens its right to "free association and assembly." (*Complaint,* ¶¶ *61 and 62*). The Resolution clearly is not a prior restraint within the meaning of the case law. A typical prior restraint would arise from a licensing or permitting regime that makes speech contingent upon a discretionary government decision to approve the content of that speech. *See Thomas v. Chicago Park District*, 534 U.S. 316 (2001). The Resolution involves no such exercise of discretion. And there is nothing in the Resolution that could reasonably be construed to restrict any right of assembly or association that the Plaintiff enjoys. Insofar as it is able, the Plaintiff remains free to enter into intimate human relationships and collaborate with its peers to express its views, assemble, and the like.

17

### Fourteenth Amendment Claims

The Plaintiff does not claim that it is a member of a "suspect class." Since the Plaintiff has also failed to establish that the Resolution impinges upon a fundamental right, this Court must apply, at most, rational basis review to the Resolution. *Hager v. City of West Peoria*, 84 F.3d 865 (7th Cir. 1996) The Resolution clearly furthers the rational goal of ensuring that pregnant women are provided truthful and accurate information. There is nothing irrational or arbitrary about the Resolution, particularly in light of the overwhelming legislative record that supports it.

The bulk of the Plaintiff's Fourteenth Amendment claim is devoted to its assertion that the Resolution is vague because various terms, including "medical services" and "primary purpose," are undefined. (*Memorandum, p. 18*). All of the terms **are** defined . . . in a dictionary. All of the terms are easily comprehensible and the Plaintiff offers no real argument that the terms have or will encourage arbitrary enforcement or are unconstitutionally vague. In *Karlin v. Foust*, the Seventh Circuit ruled that a "reasonable medical judgment" standard is not unconstitutionally vague. 188 F.3d 446 (7th Cir. 1999). In *McConnell v. FEC*, the Supreme Court ruled that the phrase "political matter of national importance" is not unconstitutionally vague. 540 U.S. 93, 241 (2003) (overruled, in part, on other grounds, *Citizens United v. FEC*, 130 S. Ct. 876; 175 L. Ed. 2d 753 (2010). More importantly, the Plaintiff was able to comprehend the words of the Resolution well enough to understand that the Resolution applies to it. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982).

18

## V. CONCLUSION

The Plaintiff meets its burden of proof as to none of the four factors that courts consider for injunctive relief. The Plaintiff cannot succeed on the merits or proceed with its Complaint because it has failed to assert a cognizable claim. *See Neitzke v. Williams*, 490 U.S. 319 (1989) (superseded by statute on other grounds); *Young v. City of Mt. Ranier*, 238 F.3d 567 (4th Cir. 2001) ("The presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) . . .") And the public interest (and public safety) is served not by an injunction against the Resolution, but by a dismissal of this lawsuit.

WHEREFORE, the Defendants request that this Honorable Court:

1. Dismiss the Complaint;

2. Deny the Plaintiff all relief requested;

3. Enter a judgment in favor of the Defendants; and,

4. Award costs and reasonable attorneys' fees to the Defendants; and,

5. Grant further relief as this Honorable Court deems just.

Respectfully submitted,

MARC P. HANSEN
ACTING COUNTY ATTORNEY

*/s/ Clifford L. Royalty*
Clifford L. Royalty, Chief
Division of Zoning, Land Use &
Economic Development
Attorneys for Defendants
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _3rd_ day of **June,** 2010, a copy of the foregoing opposition to motion for preliminary injunction and motion to dismiss was mailed, postage prepaid to:

John Garza, Esquire
17 W. Jefferson Street
Suite 200
Rockville, MD 20850

Robert Michael, Esquire
108 Park Avenue
Rockville, MD 20850

_____
Clifford L. Royalty

Date Filed: June 3, 2010

L10-00323