IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| CENTRO TEPEYAC<br><br>    Plaintiff<br><br>v.<br><br>MONTGOMERY COUNTY, et al.<br><br>    Defendants | Case No.: DKC 10 CV 1259 |

## REPLY TO OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE

The Defendants, Montgomery County, Montgomery County Council, Montgomery County Department of Health and Human Services, and Marc Hansen, Acting County Attorney, (collectively "County") reply to the Plaintiff's opposition to the motion to dismiss ("Opposition"), move to strike portions of that opposition and, in support thereof, state:

The Plaintiff's Opposition makes crystal clear (if it was not so already) that the Plaintiff is challenging a regulation that the Council never enacted. The Plaintiff does violence to the rules of statutory construction and First Amendment jurisprudence by repeatedly ignoring the plain language of Resolution No. 16-1252 and inserting words into the Resolution that are not there. To wit, the Plaintiff claims that the Resolution:

> attempt[s] to regulate pro-life speech simply because it concerns abortion . . .;
> focus[es] on pro-life pregnancy resource centers . . .;
> target[s] pro-life speakers; and,
> identifies a broad class of pro-life speakers . . . .

(*Opposition, pp. 3, 5, 9, 13*).

Citing to the Waxman staff report and a Baltimore City ordinance (but, of course, not the Resolution), the Plaintiff claims the terms "pregnancy resource center" and "limited service pregnancy resource center" refer to "pro-life facilities . . . ." (*Opposition, p. 9*).

The Plaintiff points to no language in the Resolution that supports these misinterpretations. The words "pro-life" and "abortion" are not contained in the Resolution. The Resolution defines an LSPRC, not a "pregnancy resource center." The Resolution does not reference the viewpoint of LSPRC's or their employees or contain an exemption for abortion clinics. The plain language of the Resolution thus refutes the Plaintiff's claims. As does an undisputed fact: the Resolution **does not** apply to "pro-life" pregnancy centers that employ licensed medical professionals. The legislative record contains an example of such a center: the Rockville Pregnancy Center. Because the Rockville Pregnancy Center employs licensed obstetricians and gynecologists, the Resolution does not apply to it. (*Exhibit D, p. 5 and circle 46*). The trigger for the application of the law is licensing, not viewpoint. If the Plaintiff were to hire a licensed medical professional, the Resolution would not apply to it either.

The Plaintiff tries to maneuver around the plain language of the Resolution (and the plain application of it) by seizing on that portion of the Resolution that defines an LSPRC, in part, as "providing information about pregnancy-related services." (*Exhibit No. 1 to the Defendants' motion to dismiss, lines 17-18*). This provision is only one component of a tripartite definition, but, regardless, the provision does nothing more than define the entity to which the Resolution applies. The definition does not pertain to speech that is regulated by the Resolution. The Plaintiff is free to convey any information, communicate any idea, and offer any advice to its clients. The Resolution does not govern those communications by, for example, restricting what advice the Plaintiff may give to its clients.[1] And the sign that the Resolution requires to be posted expresses no disagreement with whatever message the Plaintiff conveys to its clients.

---

[1] In a dizzying display of circular logic, the Plaintiff accuses the Council of enacting an illegal content-based regulation, while simultaneously faulting the Council for not regulating the content of speech. (*Compare Opposition, p. 6 to Opposition, pp. 13-14*).

The legislative record shows (abundantly) that LSPRCs give medical advice (much of it false) to pregnant women. Instead of attempting to regulate the substance of that advice, the Council chose to require a simple, factual disclosure to ensure that pregnant women are aware that the LSPRC providing the advice does not employ licensed medical professionals and that the County health officer encourages pregnant women to consult a licensed health care provider.

Because the Plaintiff misconstrues the regulation as governing its speech, the Plaintiff cites to inapposite case law. Many of the cases that the Plaintiff cites address laws that directly and expressly regulate, or disfavor, core speech because of the subject matter of that speech. For example, *Police Department of Chicago v. Mosely*[2] struck down a law that allowed picketing only if it related to a labor dispute (and *Mosely* was decided on equal protection grounds); *R.A.V v. St. Paul*,[3] invalidated a law that prohibited cross-burning that related to certain objectionable subjects; *Rubin v. Coors Brewing Co.*[4] struck down a regulation that prohibited information about alcohol content on a beer label; the law at issue in *United States v. Playboy Entertainment Group, Inc.*[5] required cable operators to scramble or block sexually oriented programming. In contrast, the County Council's Resolution is "silent . . . concerning any speaker's point of view." *Los Angeles v. Vincent*, 466 U.S. 789, 804 (1984).

Other cases cited by the Plaintiff are actually supportive of the Council's cause. *Citizens United v. F.C.C.* upheld "disclaimer and disclosure" laws that applied to persons funding

---

[2] 408 U.S. 92 (1972).

[3] 505 U.S. 377 (1992); *R.A.V.* also questioned whether a law can be "underinclusive" under the First Amendment. *Id.* at 387.

[4] 514 U.S. 476 (1995).

[5] 529 U.S. 803 (2000).

election advertising. 130 S.Ct 876, 913-914, 175 L.Ed 2d 753, 799-800 (2010). In *Turner Broadcasting System v. F.C.C.*, the Supreme Court addressed the constitutionality of provisions of a federal cable law that required cable operators to transmit the programming of certain broadcast stations. Even though the cable law required a specific group, cable operators, to transmit certain content, the Court did not subject the so-called "must carry" rules to strict scrutiny. 512 U.S. 622, 659-662 (1994). In *Hill v. Colorado*, the Supreme Court discussed the constitutionality of a Colorado statute that prohibited leafleting within 100 yards of a health care facility. 530 U.S. 703 (2000). The Court acknowledged that the Colorado law regulated speech, that the enactment of the statute was motivated by concerns about activities near abortion clinics, and that a "health care facility" was a place where medical counseling occurred. Nevertheless, the Court found that the Colorado statute was content neutral, that it was not "overbroad," that it was not unconstitutionally vague, and that it was not a prior restraint on speech. The Court noted that it is not "improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct." *Id.* at 721. The Court also noted that "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support." *Id.* at 724. The arguments rejected in *Hill* are of a piece with the Plaintiff's arguments in this case. *See also Burson v. Freeman*, 504 U.S. 191 (1992).

The cases most on point are *Planned Parenthood of Southeastern Pennsylvania v. Casey*[6], *Planned Parenthood Minnesota v. Rounds*[7] and, because the Resolution is in the nature

---

[6] 505 U.S. 833 (1992).

[7] 530 F.3d 724 (8th Cir. 2008).

of a consumer protection measure, *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*.[8] The Plaintiff distinguishes *Casey* on the grounds that the disclosures were required of a licensed physician and were necessary to ensure that the patient consented to a medical procedure. (*Opposition, p. 11-12*). The Plaintiff argues that the Plaintiff needs no license (apparently even if it is providing medical advice) so the reasoning of *Casey* does not apply. The distinctions that the Plaintiff draws between *Casey* and the instant case are irrelevant and not entirely accurate. The disclosures required by the statute at issue in *Casey* went beyond those required for informed consent. *Casey*, 503 U.S. at 881, 902-903; *See Rounds*, 530 F.3d at 734. And the fact that the disclosures in *Casey* were required of a physician has no bearing on whether a non-physician may be required to make truthful disclosures about (for example) that non-physician's lack of licensing. The risk to the expectant mother and the government's interest in protecting her health is even greater with respect to the non-physician than the physician.

Further, the Plaintiff imposes a "burden of proof" upon the County that is not consistent with the case law. (*Opposition, pp. 14-17*). In its motion to dismiss, the County cited *Florida Bar v. Went for It* for the proposition the government need not compile a court-worthy evidentiary record to justify speech restrictions. The Plaintiff explains away *Florida Bar* on the ground that it was a commercial speech case. While it is true that *Florida Bar* arose from a challenge to a commercial speech restriction, the evidentiary rule stated in *Florida Bar* is broader and pertains even to cases "applying strict scrutiny." 515 U.S. 618, 628 (1995) (citing *Burson v. Freeman*, 504 U.S. 191 (1992)). And, in *Turner Broadcasting System v. F.C.C.*, a case upon which the Plaintiff relies, a plurality of the Supreme Court stated that the

---

[8] 471 U.S. 626 (1985).

courts must accord substantial deference to the predictive judgments of Congress. *See, e.g., Columbia Broadcasting System, Inc.* v. *Democratic National Committee,* 412 U.S. 94, 103, 36 L. Ed. 2d 772, 93 S. Ct. 2080 (1973) (The 'judgment of the Legislative Branch' should not be ignored 'simply because [appellants] cast [their] claims under the umbrella of the First Amendment'). Sound policymaking often requires legislators to forecast future events and to anticipate the likely impact of these events based on deductions and inferences for which complete empirical support may be unavailable. As an institution, moreover, Congress is far better equipped than the judiciary to 'amass and evaluate the vast amounts of data' bearing upon an issue as complex and dynamic as that presented here. And Congress is not obligated, when enacting its statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review.

512 U.S. 665-666 (plurality opinion) (internal citations omitted).

*Turner* noted that legislative judgments are not "insulated from meaningful judicial review altogether." *Id.* at 666. But the "obligation to exercise independent judgment when First Amendment rights are implicated is not a license" for the courts "to reweigh the evidence *de novo*, or to replace Congress' factual predictions with [their] own." *Id.* (internal citations omitted); *See also United States v. O'Brien*, 391 U.S. 367, 383 (1968).

Lastly, the Plaintiff cites to a prior version of the Resolution to argue that the version that was enacted is unconstitutional. (*Opposition, p. 8*). That is improper. As has been discussed, the Plaintiff cannot ascribe illicit motives to the Council. And the courts may not strike down a law that is constitutional law because the legislature considered a law that might have been deemed unconstitutional if it were enacted and challenged in court.

### Motion to Strike

The Plaintiff cites to evidence that is irrelevant, hearsay, not part of the legislative record, and otherwise inadmissible. Footnotes 2, 8, 9, 13 and 15, for example, reference "studies," opinions, and testimony that do not appear to be part of the legislative record in this case. As is noted above, the Plaintiff cannot argue with the legislative record.

Respectfully submitted,

MARC P. HANSEN
ACTING COUNTY ATTORNEY

/s/ Clifford L. Royalty

Clifford L. Royalty, Chief
Division of Zoning, Land Use &
Economic Development
Attorneys for Defendants
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28TH day of June 2010, a copy of the foregoing reply to the opposition to the motion to dismiss was mailed, postage prepaid to:

John Garza, Esquire
17 W. Jefferson Street
Suite 200
Rockville, MD 20850

Robert Michael, Esquire
108 Park Avenue
Rockville, MD 20850

/s/ Clifford L. Royalty

L10-00323