# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| CENTRO TEPEYAC, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | **Case:  DKC-10-CV-1259** |
| V. ) | |
| ) | |
| MONTGOMERY COUNTY, ) | |
| ) | |
| MONTGOMERY COUNTY COUNCIL IN ) | |
| ITS CAPACITY AS THE MONTGOMERY ) | |
| COUNTY BOARD OF HEALTH, ) | |
| ) | |
| MONTGOMERY COUNTY DEPT. ) | |
| OF HEALTH AND HUMAN SERVICES, ) | |
| ) | |
| AND MARC HANSEN, ACTING ) | |
| COUNTY COUNSEL, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

Plaintiffs submit this brief in response to the motion to strike included in Defendants'
Reply to Opposition to Motion to Dismiss and Motion to Strike (Docket Entry 19) (hereinafter
"Motion to Strike").  Defendants asked this Court to strike materials cited in five footnotes to
Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction and Opposition to
Defendants' Motion to Dismiss, or in the Alternative, Summary Judgment (Docket Entry 17)
(hereinafter "Plaintiffs' Reply").  The entirety of Defendants' argument is as follows:

> The Plaintiff cites to evidence that is irrelevant, hearsay, not part of the legislative record,
> and otherwise inadmissible.  Footnotes 2, 8, 9, 13, and 15, for example, reference
> 'studies,' opinions, and testimony that do not appear to be part of the legislative record in
> this case.  As is noted above, the Plaintiff cannot argue with the legislative record.

Motion to Strike at 6.  Defendants' request should be denied, because the materials at issue are

relevant to the parties' arguments and may properly be considered by the Court at this stage.

Taking Defendants' claims in order:

> 1. ***Evidence Concerning the Health Effects of Abortion Undermines Defendants'
> First Amendment Argument that the Law Serves a Compelling Government
> Interest.***

As the briefing to date makes clear, the parties disagree as to the appropriate First

Amendment standards that should be applied to the speech regulations at issue.  Plaintiffs assert

that the regulation is content- and viewpoint-based, because it is triggered solely by whether a

speaker wants to talk about one particular subject (pregnancy) and because Defendants have

admitted—both when enacting the law and in their briefs—that the law is designed to target

speech about abortion with which they apparently disagree and label "false."   Accordingly,

Plaintiffs argue that the regulation is presumptively unconstitutional, and can only be upheld if it

is precisely tailored to a compelling government interest, which it is not.  *See, e.g., Riley v. Nat'l

Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800-801 (noting that the government cannot

"dictate the content of speech absent compelling necessity, and then, only by means precisely

tailored."); *see also id.* at 796-98 (1988) ("These cases cannot be distinguished simply because

they involved compelled statements of opinion while here we deal with compelled statements of

"fact": either form of compulsion burdens protected speech. Thus, we would not immunize a law

requiring a speaker favoring a particular government project to state at the outset of every

address the average cost overruns in similar projects, or a law requiring a speaker favoring an

incumbent candidate to state during every solicitation that candidate's recent travel budget.

Although the foregoing factual information might be relevant to the listener, and, in the latter

case, could encourage or discourage the listener from making a political donation, a law

compelling its disclosure would clearly and substantially burden the protected speech.").

In response, Defendants argue that the law is permissible because it "further[s] the Council's compelling interest in protecting pregnant women."  Opposition to Motion for Preliminary Injunction and Motion to Dismiss or, in the Alternative, Summary Judgment (Docket Entry No. 5) (hereinafter "Motion to Dismiss") at 16.  Defendants argue that the law is justified because of allegedly false statements made in the past by other speakers at other pregnancy resource centers.  *See, e.g.,* Motion to Strike at 3; Motion to Dismiss at 3-4 Defendants argue that *Wooley v. Maynard* and its progeny are "irrelevant," and that *Planned Parenthood v. Casey* "is on point and controls."  Motion to Dismiss at 16.[1]

Under *either* party's suggested mode of analysis, Montgomery County's claim that the First Amendment permits the government to compel speech whenever a local government believes that any speaker will speak "falsely" about abortion finds no support in either the law of free speech or the post-*Roe v. Wade* abortion cases.  At the preliminary injunction stage and/or at the motion to dismiss stage[2] the court examines the nature and scope of the government's asserted interest, and then determines whether and how the speech regulation is tailored to serve that interest.

First, the County's Motion to Strike illustrates the sweeping overbreadth of its alleged regulatory interest.  By moving to strike a mere *reference* to studies in medical journals

---

[1] Notably, Defendants do not offer a single citation for the proposition that *Casey* is "controlling" as to the speech of speakers who are not actually *performing* abortions, are not engaged in the practice of medicine, and are not about to perform a procedure that would be a battery absent informed consent.

[2] Defendants' attempt to convince this Court in the motion to dismiss that it has *already* carried its heavy First Amendment burden—as a matter of law, and without so much as presenting a witness or producing a document—should be summarily rejected.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("It follows, therefore, that a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense.").

concerning the potential negative health consequences of abortion[3] on the grounds that the information is "irrelevant, hearsay, not part of the legislative record, and otherwise inadmissible," the County is attempting to control not only the information women will hear, but also the evidence that can and should be considered by this court in analyzing Defendants' alleged interest.

Defendants cite no authority for the proposition that this Court is limited to the particular materials assembled by the legislature as part of the legislative history. To the contrary, the law is clear that the Court must independently evaluate the sufficiency of the government's claimed interest. *See Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 843-44 (1978) ("Deference to a legislative finding cannot limit judicial inquiry when First Amendment rights are at stake. . . . Were it otherwise, the scope of freedom of speech and of the press would be subject to legislative definition and the function of the First Amendment as a check on legislative power would be nullified."). The Defendants cannot rely on the one-sided nature of the Council's legislative history—driven, no doubt, by the Council's laser-like focus on speech by pro-life pregnancy centers—to urge this Court to find, as a matter of law, that no other facts could possibly exist.

Second, Defendants cite no authority for the proposition that the Court cannot consider hearsay evidence at the preliminary injunction and motion to dismiss stages. In fact, the law is clear that reliance upon hearsay evidence is entirely permissible at this stage. *See, e.g., SEC v. Cherif*, 933 F.2d 405, 412 n. 8 (7th Cir. 1991) ("[H]earsay evidence may be considered in a preliminary injunction hearing."). Indeed the *entirety* of the evidence upon which the Defendants rely is hearsay (and often double- or triple-hearsay, with unnamed declarants from

---

[3] *See* Plaintiff's Reply at note 2 (citing medical evidence of, *inter alia*, a link between abortion and breast cancer, and other physical and psychological complications from abortion).

partisan groups).

Third, Plaintiff's evidence is clearly relevant, as it shows—at the very least—that there is

a medical basis for many of the statements which Defendants have deemed "false."  Defendants

have argued—both in the legislative history and in their briefs to this Court—that the regulation

is permissible because it targets "false" speech.  *See* Motion to Dismiss at 3-4 (arguing that prior

speech by pregnancy resource centers was "false"); *id.* at 8 (arguing that "fraudulent speech [is] .

. . not protected by the First Amendment").[4]  Defendants offer no authority for the proposition

that the government can defend a speech regulation as protecting against false speech, but that

the speaker should be barred from introducing evidence that the speech was actually true.[5]

### 2.   *Baltimore's Non-Enforcement Agreement Undermines The Alleged Government Interest*

Defendants argue that the regulation is justified by their interest in protecting women

from allegedly false speech about abortion.  In response, Plaintiff cited to the City of Baltimore's

---

[4] In any case, Defendants' falsity argument confirms that content-based nature of the regulation. The government can no more deem one side of this medical dispute "false," and therefore proscribable, than Congress could deem certain statements about the war in Iraq or its healthcare law false and proscribable.  In either case, the legislature is enacting a speech restriction because it disagrees with the substance of a speaker's speech on a controversial issue, which is forbidden. *See Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government *must abstain* from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.") (emphasis added); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("[The] principal inquiry in determining content neutrality . . . *is whether the government has adopted a regulation of speech because of disagreement with the message it conveys*.") (emphasis added).  As set forth in Plaintiff's prior briefs, the Defendants' candid admissions on these issues are fatal.

[5] Nor can Defendants defend their regulation as aimed at commercial speech.  Plaintiffs' speech is simply not commercial speech.  *See, e.g., Central Hudson Gas & Elec. Corp v. Public Serv. Comm'n,* 447 U.S. 557, 561 (1980)(commercial speech is speech "*solely* related to the *economic* interests of the speaker and its audience") (emphasis added); *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 482 (1989) (noting that "propos[ing] a commercial transaction . . . is what defines commercial speech.").  Indeed, Montgomery County was recently instructed by Maryland's highest court that it cannot regulate non-commercial speech—i.e., speech that does not propose a commercial transaction—based on its content.  *See Nefedro v. Montgomery County,* 2010 WL 2302311, *8 (Md., 2010).

decision, in litigation concerning its own similar pregnancy center speech regulation, to forego all enforcement of the law for the remainder of 2010 in exchange for an additional 40 days in which to answer the complaint. *See* Plaintiff's Reply at n.8.

Defendants cite no authority for the proposition that this Court must ignore the actions of other governments in not enforcing similar laws as demonstrating the absence of a compelling interest. Where, as here, a neighboring jurisdiction completely and voluntarily gives up its right to protect the alleged interests, the Court is justified in concluding that governmental assertions of a "compelling" interest in such laws are groundless.

> ### 3. *Evidence Concerning Abortion Clinic Counseling Undermines The Government's Decision to Exempt Unlicensed Speakers at Abortion Clinics.*

As set forth in Plaintiff's initial memorandum, the law does not purport to regulate all pregnancy counseling by unlicensed speakers. Rather, if an unlicensed speaker at an abortion clinic provides counseling, the law imposes no obligation whatsoever to disclose the speaker's lack of a license, or to disclose whether the speaker or the abortion clinic has a financial interest in a patient choosing abortion over childbirth. Plaintiff argues that this underinclusiveness undermines the asserted government interest, and suggests a deliberate attempt to target speakers on one side of the abortion debate, which is confirmed by the law's legislative history and Defendants' own statements. *See, e.g.,* Plaintiff's Reply at 6-10. Although discovery has not yet begun—and therefore Plaintiff cannot be expected to present evidence of the level of training of pregnancy counselors at abortion clinics in Montgomery County—Plaintiff cited to sworn deposition testimony by Planned Parenthood employees in other jurisdictions suggesting that, in fact, women were routinely counseled by unlicensed speakers, and did not speak to a doctor unless and until the abortion decision had already been made. *See id.* at 10 and n. 9. These documents are relevant to both the motion for preliminary injunction and the motion to dismiss,

because they suggest that the law is unconstitutionally underinclusive, by failing to regulate these discussions which would implicate the government's asserted interests.[6]

    **4.** ***The Washington Post Editorial Undermines Defendants' Claims By Showing That They Were Likely Aware The Resolution Targeted Only One Side of the Abortion Debate and Did Not Directly Address the Alleged Problem.***

Defendants argue at length that the Resolution is not designed to target pro-life speakers. Defendants' claims are undermined not only by their own admissions, but also by contemporaneous, public commentary on their law before it was enacted.  As an example, Plaintiff cited to a *Washington Post* editorial which argued that the resolution "does not directly address" the alleged problem of false speech about abortion, and noted that the "proposed disclosure is too cryptic to be an effective alarm bell for many women ***and yet is suspect because it singles out pregnancy centers while absolving abortion clinics of any disclosure requirements regarding adoption or parenting options.***"  *See* Plaintiff's Reply at 14, n. 13 (citing "Pregnant and in Need of Help, Montgomery's Legislation on Disclosure is Flawed," *Washington Post*, November 23, 2009, available at

http://www.washingtonpost.com/wpdyn/content/article/2009/11/22/AR2009 112201605.html.)

(emphasis supplied).  These observations, made in the region's largest newspaper, suggest that the Council must have realized that its law was, in fact, impermissibly targeted at one side of the abortion debate, and did not address the claimed problem at all.

---

[6] As with the evidence related to possible negative health effects of abortion, the Defendants offer no authority for the bizarre suggestion that they can stack the litigation deck by focusing the legislative history solely on the alleged actions of speakers on one side of the debate, and then urge the court to ignore contrary evidence the legislature did not consider.  Likewise, if sworn deposition testimony by Planned Parenthood employees in a federal court action is to be excluded as hearsay or otherwise unreliable, then the legislative history upon which Defendants purport to rely should likewise be excluded, as it is brimming with unsworn, undocumented statements, which are virtually all hearsay, and many of which come from unnamed declarants.

**5.   *Evidence of a Link Between Oral Contraceptive Use and Breast Cancer Undermines the Government's Asserted Interest.***

Defendants rely on claims that Plaintiff allegedly lied by claiming that use of oral contraceptives could lead to cancer.  *See* Motion to Dismiss at 4 (citing hearsay allegation by NARAL volunteer investigator).  In response, Plaintiff cited to evidence showing that, in fact, there is medical evidence showing an "increased risk of breast cancer" for women taking oral contraceptives.  *See* Plaintiff's Reply at 16 and n. 15.  In light of Defendants' reliance on the alleged falsity of this alleged statement, Plaintiffs' citation to the medical evidence is proper and relevant.  As with the medical evidence concerning negative health consequences from abortion, the evidence cited both rebuts Defendants' claims of falsity and undermines the alleged governmental interest in claiming to have found the "true" and "false" sides to these medical debates and regulating private speech accordingly.[7]

Respectfully submitted,

 /s/ John R. Garza, Bar #01921
John R. Garza, Bar # 01921
Garza, Regan & Associates
17 West Jefferson St.
Rockville, MD 20850
(301) 340-8200

Robert Michael
Shadoan, Michael & Wells LLP
108 Park Avenue
Rockville, MD 20850
301-762-5150

---

[7] Nor can the government cloak its content and viewpoint-based speech restriction as an effort to prevent fraud on these particular topics.  As the Supreme Court made clear in *Riley*, the government should enforce its antifraud laws against actual cases of fraud and, "[i]f this is not the most efficient means of preventing fraud, we reaffirm simply and emphatically that the First Amendment does not permit the State to sacrifice speech for efficiency."  *Riley* at 795; *see also id.* at 800-801 (noting that the government can speak on its own behalf or enforce its antifraud laws, and must rely on these narrowly tailored approaches because it cannot "dictate the content of speech absent compelling necessity, and then, only by means precisely tailored.").

9

Mark L. Rienzi, *pro hac vice*
Robert Destro*
Columbus School of Law
Catholic University of America
3600 John McCormack Rd. NE
Washington, DC 20064
202-319-4970

**Of counsel**
Steven H. Aden, *pro hac vice*
Casey Mattox, *pro hac vice*
Matthew Bowman, *pro hac vice*
ALLIANCE DEFENSE FUND
801 G St., N.W., Suite 509
Washington, DC  20001
202-393-8690

*Attorneys for Plaintiff*

*Pro hac vice* motion to be filed

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2010, I electronically filed the foregoing Plaintiff's

Opposition to Defendants' Motion to Strike to the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to the following CM/ECF participants:


Montgomery County, Montgomery County Council,
Montgomery County Department of Health and Human Services,
and Marc Hansen, Acting County Attorney
Executive Office Building
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850


Clifford L. Royalty, Chief
Division of Zoning, Land Use &
Economic Development
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850


 /s/ John R. Garza, Bar #01921
John R. Garza, Bar # 01921
Garza, Regan & Associates
17 West Jefferson St.
Rockville, MD 20850
(301) 340-8200